UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LITA Y. GRACE, | § | |
|     *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-04-1182 |
| | § | |
| JOHN E. POTTER, | § | |
|     Postmaster General, United States | § | |
|     Postal Service | § | |
|     *Defendant*. | § | |

### OPINION ON SUMMARY JUDGMENT

In this federal employment Title VII suit, plaintiff Lita Y. Grace contends her former employer, the United States Postal Service ("USPS"), subjected her to a hostile work environment based on race, sex, and retaliation for prior EEO activity. The USPS seeks summary judgment on all claims. As explained below, this motion is granted.

### Background

Lita Grace is a black female who began working for USPS in 1986, eventually becoming a supervisor. Her tenure with the USPS was not always harmonious, and ended in 2001 with a disability retirement. In 1993 and 1995, Grace filed EEO complaints against her supervisors, Willy Johnson and Albert Brewer.[1] The complaint against Johnson was for sexual harassment; the exact date and nature of the other is unclear.[2] Grace contends that, beginning in 1997, the USPS retaliated against her by subjecting her to a hostile work environment. In response, Grace filed two more EEO complaints in 2000, one in July and one in November, this time for a hostile work environment

---

[1] Dkt. 36, Ex. 2, p. 5.

[2] During her deposition, Grace stated that, in reference to Brewer, "I don't remember exactly what I filed on him." Dkt. 36, Ex. 10, p. 43.

based on race, sex, and retaliation. Grace cites the following in support of her hostile work environment claim:

- She was transferred nine times between 1997-1998[3] after she filed the EEO complaints, which prevented her from proving herself at any one assignment;
- In September 1999, she was required to use sick and annual leave time by her manager after she was falsely accused of assault by an employee under her supervision;
- In February 2000, she was slandered by union officials who complained about her aggressive and combative style of supervision and her poor relations with customers, but was then denied the opportunity to defend herself by a district manager;
- On March 17, 2000, a postal carrier and subordinate (Devaughn) assaulted her in violation of the USPS zero tolerance policy, but the incident was not investigated nor was Devaughn immediately disciplined;
- On April 1, 2000, her supervisory authority was undermined when the acting Station Manager at the Ashford West Station resolved all grievances without an investigation; and,
- In August 2000, she was denied reassignment to a non-supervisory position even though one was available.

In December 2002, an Administrative Judge issued a finding rejecting these claims.[4] In January 2003 the agency adopted the AJ's decision as its final action. Potter appealed the decision to the EEOC's Office of Federal Operations, which affirmed the agency's final order on the merits.

## Analysis

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Provident*

---

[3] Conflicting dates are given in the record for exactly when these transfers occurred. It appears they started in 1997 and occurred throughout 1998. *See* Dkt. 36, Ex. 10, pp. 47-81.

[4] The EEOC's further dispositions affirming the Administrative Judge's decision may be reviewed at 2003 WL 22288478 (Sept. 30, 2003, E.E.O.C. Doc. 01A32003) and 2004 WL 189646 (Jan. 13, 2004, E.E.O.C. Doc. 05A40143).

*Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1.  **Hostile Work Environment Based on Race and Sex**

    Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

    To establish a claim of hostile work environment based on race or sex, a plaintiff must show that she: (1) belongs to a protected class; (2) was subjected to unwelcome harassment; (3) that is based on race or sex; (4) that affects a term, condition, or privilege of employment; and (5) which the employer knows or should know of and fails to promptly remedy. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005); *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).

    Even accepting Grace's version of events at face value, there is nothing to suggest these incidents were based on race or sex. Unlike racial slurs or sexual innuendo, these incidents carry no overtly racist or sexist overtones. Grace has merely rehearsed a litany of indignities and unfair treatment which are untethered to any form of discriminatory bias. Multiple transfers, required use

of sick and annual leave time, slander by union officials without recourse, assault by a black co-worker, undermining of her supervisory authority, and denial of transfer to a lesser position at no cut in pay–none of these things inherently suggest a work environment infected by invidious discrimination.[5] In her deposition testimony, Grace was specifically asked to identify the connection to race or sex with respect to several of these matters, but was unable to do so other than to vaguely suggest that cumulatively they amounted to racial and sexual harassment.[6]

Even if these various incidents are considered abusive or hostile in some loose sense, the USPS's conduct must have been in violation of some protection afforded by Title VII to be actionable. The law offers little recourse for an employee who merely finds her work experience unpleasant or disagreeable. *Cf. Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1297 (3d Cir. 1997) ("not every insult, slight, or unpleasantness gives rise to a valid Title VII claim").

Grace attempts to draw an inference of discrimination by pointing to more favorable treatment allegedly accorded other employees similarly situated with respect to assaults by co-workers and transfers to non-supervisory positions:[7]

- Merla Hanks, a black female, was reassigned from a supervisory position without having to take a corresponding reduction in pay or "downgrade";
- Jack Devaughn, a black male, was not disciplined for hitting her;
- Ruby Holcombe, a white female; when a person under her supervision assaulted her, that person was suspended immediately;
- Isidor Mesa, a Hispanic male; when he was assaulted, the assailant was immediately suspended;

---

[5]  Although some of these incidents might well be analyzed as separate, stand-alone employment decisions rather than subsumed into a hostile work environment claim, the court will address the theory advanced by the plaintiff and her counsel in the pleadings and at oral argument. As will be seen, the ultimate outcome is not affected by how her claim is packaged.

[6]  *See, e.g.*, Dkt. 36, Ex. 10, pp. 37-41

[7]  *See* Dkt. 2, pp. 39-41; Dkt. 37, Ex. 7.

4

- Sylvia Balboa, a Hispanic female, was transferred to a non-supervisory position with no downgrade;
- Sonia Hernandez, a Hispanic female, was transferred to another position with no downgrade;
- Glynn Craft, a white male, was transferred from a supervisory position with no downgrade.

One glance at this list destroys any inference of race- or sex-based disparate treatment. Four of the favored individuals are female, and two are black (including one black female). Even accepting for the moment Grace's unsupported assertion that these individuals received the favorable treatment she claims, this list effectively rebuts any inference of discrimination based on her race or sex.[8]

Moreover, USPS has provided a nondiscriminatory explanation for these employment actions. Grace is simply mistaken when she asserts that the alleged assault by Jack Devaughn was neither investigated or that Devaughn was not disciplined. In fact, the local police were called, Postal Service investigators were brought in, and Devaughn, Grace, and Ahn Nguyen, another USPS employee, were questioned about the matter.[9] Devaughn was not terminated, however, because the investigation was inconclusive.[10] The USPS determined that there were no witnesses who directly observed the incident and thus, no definitive conclusion could be drawn as to what, if anything, happened, or which of the parties were at fault if there was an altercation.[11]

---

[8]  In order to establish disparate treatment, a plaintiff must show that individuals **outside** of her protected class were treated differently under circumstances nearly identical to hers. *See Abarca v. Metropolitan Transit. Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (per curiam); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

[9]  *See* Dkt. 36, Exs. 13, 14.

[10]  *See* Dkt. 36, Exs., 13, 14.

[11]  Dkt. 36, Ex. 13, 14.

USPS also explains that Grace was not transferred to a non-supervisory position because she would not accept a corresponding reduction in pay. Phillip Pelch, a manager of human resources with the USPS, clarified that

> Ms. Grace wanted a non-supervisory position, but she did not want a decrease in her salary. I could not accommodate Ms. Grace's request to transfer to an enabling job because the Postal Service had placed a hold on all such positions in Houston in preparation of downsizing.... I gave Ms. Grace the opportunity to be reassigned or downgraded to a non-supervisory position, but Ms. Grace refused because she did not want to take a pay cut.[12]

Grace has not cast doubt on these explanations or produced any summary judgment evidence which would allow a reasonable trier of fact to conclude that the USPS's articulated reasons were pretext for racial or sexual discrimination. Her subjective belief that the USPS should have adopted her characterization of the incident and terminated Devaughn is not material. *Cf. Guarino v. Potter*, 2003 WL 22439799, at *16 (E.D. La. 2003) ("it is irrelevant whether the Postal Service's decision may have been based on incorrect facts, so long as its decision was not motivated by discriminatory or retaliatory animus").

Because there is no genuine issue of material fact, summary judgment must be granted in favor of the USPS on the race and sex-based hostile work environment claims.

### 2.  **Hostile Work Environment Based on Retaliation**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge ... under this subchapter."

---

[12]   Dkt. 36, Ex. 17.

42 U.S.C. § 2000e-3(a).  A retaliation claim under Title VII has three elements:[13] (1) the employee engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between the protected activity and the adverse employment action.  *Walker v. Thompson*, 214 F.3d 615, 628-29 (5th Cir. 2000).  The standard for proving causal nexus in retaliation cases is "causation-in-fact" or "but-for" causation.  "Whether or not there were other reasons for the employer's action, the employee will prevail only by proving that 'but for' the protected activity she would not have been subjected to the action of which she claims."  *Jack v. Texaco Research Center*, 743 F.2d 1129,1131 (5th Cir. 1984); *see also Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 436 (5th Cir. 1995).

It is undisputed that filing a formal EEO complaint is activity protected by § 704 of Title VII, and so Grace has satisfied the first element.  *See, e.g., Evans v. City of Houston*, 246 F.3d 344, 352-53 (5th Cir. 2001); *Suttles v. United States Postal Serv.*, 927 F. Supp. 990, 1009 (S.D. Tex. 1996) (postal employee's filing of EEO complaint was protected activity).  The Fifth Circuit holds that the "adverse employment action" must be an "ultimate employment decision," such as hiring, granting leave, discharging, promoting, or compensating; not merely an "interlocutory or mediate" decision. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707-08 (5th Cir. 1997).  This formulation suggests that a hostile work environment theory of retaliation might not be viable in this circuit, although no

---

[13] These elements are sometimes referred to as a "prima facie case", but that terminology invites confusion. The components of a *McDonnell Douglas*-type prima facie case are variable, and do not apply to all discrimination cases across the board.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973) ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). None of the four prima facie elements listed by Justice Powell in *McDonnell Douglas* are indispensable to a finding of Title VII liability, even in a hiring case. *See* S.W. Smith, *Title VII's National Anthem*, 12 LAB. LAW. 371, 376 (1997) (citing cases).  By contrast, the three listed elements of a retaliation claim are indispensable to a finding of retaliation, because these elements embody requirements rooted in the text of § 704(a): standing, injury, causation.  *Id.* at 395-98.  A retaliation plaintiff unable to establish (or at least create a fact issue on) all three of these elements cannot prevail.

7

case has expressly so held. The Supreme Court recently heard oral argument in a case to decide what types of conduct can constitute actionable retaliation under Title VII § 704. *Burlington Northern Santa Fe Railway Co. v. White*, No. 05-259 (April 17, 2006). In light of that pending decision, it will be assumed for purposes of this motion that Grace has at least created a fact issue as to the adverse employment action element of her claim.

However, Grace has utterly failed to produce any evidence of causal nexus. Although not determinative, the timing of the putative retaliation is an important factor in determining the presence of a causal link. *See, e.g., Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994). By itself, temporal proximity between an employer's knowledge of protected activity and an adverse employment action may be sufficient evidence to create a jury issue on retaliation, provided that the time interval is "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (*per curiam*). *Breeden* held that a gap of 20 months "suggests, by itself, no causality at all" and cited with approval circuit court decisions holding that intervals of 3 months and 4 months, respectively, were insufficient. *Id.*; *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3 months); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 months).

The 2-year time interval between Grace's 1995 EEO complaint[14] and the initial onset of adverse employment actions is far too long to warrant an inference of causal nexus under *Breeden*. No reported Fifth Circuit decision has ever upheld judgment in favor of a Title VII retaliation plaintiff over such an interval of time. *See, e.g., Foster v. Solvay Pharms., Inc.*, 160 Fed. Appx. 385,

---

[14] Measured from her initial EEO complaint in 1993, the time gap doubles to four years. This lengthy period of tolerance for Grace's earlier claims of discrimination further undermines any inference of retaliatory motive. *See Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 436 (5th Cir. 1995).

389 (5th Cir. 2005) (unpublished). To the contrary, absent countervailing evidence, such a time gap actually negates an inference of retaliatory motivation.

Nor has Grace offered any such countervailing evidence. There is no indication that Grace's supervisors reacted in a hostile or negative manner to her EEO complaints. *Cf. Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) (plaintiff's supervisor made disparaging references to her EEOC charge at least twice a week during 14 month interval). Nor is there any evidence that the individuals responsible for the treatment complained of in the earlier charges were in any way involved in the allegedly retaliatory conduct beginning in 1997. The record is also devoid of evidence that USPS gave preferential treatment to similarly situated employees who had not filed EEO complaints.

Finally, Grace has not offered any evidence to contradict USPS legitimate, non-retaliatory explanation for the multiple transfers which are the principal focus of her retaliation claim. According to the USPS, Grace was transferred to various postal stations in the Houston area for two reasons: (1) to meet legitimate staffing needs, and (2) to attempt to find an environment where Grace could get along with her co-workers.

Bernadette Triche, the Area Manager of the USPS in the Houston District, explained:

> I initiated Ms. Grace's transfers because I was trying to help her. Her poor interpersonal skills consistently caused conflict with the craft employees she supervised and caused problems with other supervisors. But I didn't want to fire Ms. Grace because, to me, she seemed to have the potential for being a good supervisor if she could improve her interpersonal and communication skills. I also sent Ms. Grace to training to help her improve her interpersonal skills.
> In making my decisions to transfer Ms. Grace, I gave no consideration to whether she had filed any type of EEO complaint in the past. When a supervisor has on-going conflict with her craft employees, it is customary to move the supervisor to a different station. It is also more cost-effective to resolve supervisor-employee conflicts by reassigning one supervisor than it is to reassign several craft workers.

> I also want to note that Ms. Grace had expressed a desire to get experience working at other stations and branches. By transferring her to various stations I was trying to help Ms. Grace reach those goals.[15]

Phillip Pelch, manager of human resources, offered this similar reason for the transfers:

> In my opinion, Ms. Grace did not perform well as a supervisor because she had frequent run-ins with employees. Her aggressive, confrontational style of communicating caused repeated conflicts with the craft employees she supervised. Ms. Grace often displayed a poor attitude and disagreeable behavior.
> As for Ms. Grace's series of reassignments in 1997 and 1998, it is not unusual to move a supervisor when repeated employee-supervisor conflicts arise. It is not uncommon to move supervisors from one unit to another, not only for personality disputes, but also due to other business conditions. It is easier to resolve employee-supervisor problems by moving one supervisor than by moving several craft workers.[16]

In response, Grace offers only a conclusory assertion that the USPS has issued "inconsistent explanations" for the transfers.[17] No elaboration is given and no specific examples of inconsistencies are identified. Moreover, in her deposition testimony Grace was questioned about each individual transfer. For the most part, Grace acknowledged that she was transferred to various postal stations either because a supervisor was needed at that station, or because they were behind in deliveries at the station and additional help was required.[18] Grace did not cite retaliation, race, or gender as motivating any particular transfer. Instead, Grace stated:

> I consider it to be abusive in a sense because I was used as going to clean up places and it made me look like the bad supervisor because I was doing my job, and they abused me because they were not disciplining other supervisors for not doing their job, so I had to go and clean up other supervisors – the jobs that they didn't do I had

---

[15] Dkt. 36, Ex. 19.

[16] Dkt. 36, Ex. 17.

[17] Dkt. 37.

[18] *See* Dkt. 36, Ex. 10, pp. 49-81.

10

to go and clean them up and I had to go get them in order and those other supervisors were moved to other easy positions. If I was moved from one station to the next station they moved that supervisor back in that clean position, in that clean area, and I thought it was very abusive to me because it made me look like the hardnose supervisor.[19]

Accordingly, there is no substantial record evidence on which a reasonable fact-finder could render a retaliation verdict in Grace's favor. USPS is therefore entitled to judgment as a matter of law on this claim as well.

## Conclusion

For these reasons, the USPS's motion for summary judgment is granted.

Signed on May 3, 2006, at Houston, Texas.

Stephen Wm Smith
United States Magistrate Judge

---

[19] Dkt. 36, Ex. 10, pp. 79-80.